UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| ANTHONY WILLIAMS, #B-15551, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: 11-1319-JES-BGC |
| ) | |
| ) | |
| CORRECTIONAL OFFICER SMALLS, ) | |
| DR. VADE, WARDEN MARCUS HARDY, ) | |
| and NURSE FRIEL, ) | |
| ) | |
| Defendants. ) | |

**OPINION**

**JAMES E. SHADID, Chief U.S. District Judge:**

This cause is before the Court on Defendants Suresh Vade, M.D., and Joyce Friel, R.N.'s Motion for Summary Judgment [d/e 32].

**I.
MATERIAL FACTS**

Before reciting the facts material to the instant motion, the Court notes that Plaintiff Anthony Williams ("Williams") failed to file a response to Defendant Suresh Vade, M.D. ("Dr. Vade") and Defendant Joyce Friel, R.N.'s ("Nurse Friel") (collectively, "Defendants") motion for summary judgment. Pursuant to Local Rule 7.1(D)(2)(b)(6), "[a] failure to respond to any numbered fact will be deemed an admission of the fact." *Id*. Accordingly, by failing to file a response, Williams has admitted every numbered fact asserted by Defendants in their motion for summary judgment. Nevertheless, the Court has reviewed Williams' deposition, his Complaint, and the documents attached to his Complaint in order to determine whether a genuine issue of material fact exists and whether Defendants are entitled to judgment as a matter of law.

1

On August 18, 2009, Williams was an inmate with the Illinois Department of Corrections and was housed at the Pontiac Correctional Center. On that date, Williams was involved in an altercation with Correctional Officer Daniel Small ("Small"). This altercation resulted in Williams sustaining a broken left little finger, a laceration, and abrasions.

Dr. Vade is a physician licensed to practice medicine in the State of Illinois. On August 18, 2009, Dr. Vade was employed as a medical professional at the Pontiac Correctional Center and was the doctor who provided medical attention to Williams.

Nurse Friel is a registered nurse licensed to practice nursing in the State of Illinois. On August 18, 2009, Nurse Friel was employed as a medical professional at the Pontiac Correctional Center. Nurse Friel did not participate in Williams' treatment; rather, she simply documented his medical treatment that he received from others, completing the requisite paperwork that accompanied Williams' treatment.

After sustaining his injury, Williams arrived at the prison's health care unit at 9:45 a.m. Thereafter, Williams' vital signs were taken; his blood pressure was 148/102; his pulse was 99. Soon thereafter, Dr. Vade became aware that Williams was in the health care unit and was awaiting treatment, and so, Dr. Vade ordered X-rays be taken of Williams' finger. These X-rays were necessary to rule out the possibility that Williams would need surgery on his little finger. Dr. Vade decided not to immediately suture Williams' finger because, if surgery were determined to be necessary based upon the results of the X-ray, the sutures would need to be removed in order to perform the surgery.

The X-rays revealed that Williams has suffered a small, non-displaced fracture of the left proximal finger that did not require surgery. So, Dr. Vade cleaned the area with Betadine and

placed five sutures into Williams' laceration. According to Dr. Vade, Williams tolerated the procedure well. Williams returned to his cell between 1:00 p.m. and 2:00 p.m.

After returning to his cell, Williams noticed some bleeding from his left finger at approximately 3:00 p.m. So, Williams returned to the health care unit where Dr. Vade removed a loose suture and replaced it with two new ones. Williams then returned to his cell arriving at approximately 5:00 p.m. As before, Dr. Vade did not believe that Williams was in distress when he saw Williams for the second time that day. Two weeks later, another doctor at the prison removed Williams' sutures. Since sustaining his injury, Williams has been able to engage in daily activities and some strenuous activities such as playing basketball.

On August 19, 2011, Williams filed the instant suit under 42 U.S.C. § 1983 against Dr. Vade and Nurse Friel alleging a violation of his Eighth Amendment rights. Dr. Vade and Nurse Friel have now filed the instant motion for summary judgment claiming that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law.

## II.
## LEGAL STANDARDS GOVERNING SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Ruiz-Rivera v. Moyer,* 70 F.3d 498, 500-01 (7th Cir. 1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v.*

*Volvo Europa Truck, N.V.,* 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he "'must do more than simply show that there is some metaphysical doubt as to the material fact.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57 (1986)(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)); *Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 818 (7th Cir. 1999). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 250.

### III.
### DELIBERATE INDIFFERENCE ESTABLISHES A HIGH THRESHOLD

The Eighth Amendment prohibits punishments that are incompatible with "evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958). "The Eighth Amendment safeguards the prisoner against a lack of medical care that may result in pain and suffering which no one suggests would serve any penological purpose." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011)(internal quotations and footnote omitted). "Prison officials violate the Constitution if they are deliberately indifferent to prisoners' serious medical needs." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009)("Deliberate indifference to serous medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the

Constitution."); *Walker v. Benjamin*, 293 F.3d 1030, 1036-37 (7th Cir. 2002)(noting that the Eighth Amendment applies to the states through the Fourteenth Amendment).

The deliberate indifference standard requires an inmate to clear a high threshold in order to maintain a claim for cruel and unusual punishment under the Eighth Amendment. *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999). "In order to prevail on a deliberate indifference claim, a plaintiff must show (1) that his condition was 'objectively, sufficiently serious' and (2) that the 'prison officials acted with a sufficiently culpable state of mind." *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008)(quoting *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005)); *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)(same). "A medical condition is serious if it 'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Lee*, 533 F.3d at 509 (quoting *Greeno,* 414 F.3d at 653). "With respect to the culpable state of mind, negligence or even gross negligence is not enough; the conduct must be reckless in the criminal sense." *Id.*; *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994)("We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.").

In other words,

> [d]eliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts. And although deliberate means more than negligent, it is something less than purposeful. The point between these two poles lies where the official knows of and disregards an excessive risk to inmate health or safety or where the official is both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . draw the inference. A jury can infer deliberate indifference on the basis of a physician's

5

> treatment decision when the decision is so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.

*Duckworth*, 532 F.3d at 679 (internal quotations and citations omitted). The Seventh Circuit has cautioned, however, that "[a] prisoner [] need not prove that the prison officials intended, hoped for, or desired the harm that transpired. Nor does a prisoner need to show that he was literally ignored. That the prisoner received some treatment does not foreclose his deliberate indifference claim if the treatment received was so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition." *Arnett*, 658 F.3d at 751 (internal citations and quotations omitted).

With these standards in mind, the Court turns to the facts in this case.

## IV.
## ANALYSIS

### A. Williams cannot show that Dr. Vade was deliberately indifferent to his serious medical need.

Dr. Vade has acknowledged—for purposes of summary judgment—that Williams suffered a serious medical condition after his confrontation with Small on August 18, 2009. Thus, the Court's focus is on whether Dr. Vade acted with deliberate indifference in his response to Williams' serious medical need. *Id*.

Williams tenders five ways in which Dr. Vade was deliberately indifferent to his medical condition: (1) Dr. Vade waited an inordinate amount of time before examining and treating him; (2) Dr. Vade poorly treated his wound, so much so that Williams had to re-visit Dr. Vade a short time thereafter to have new sutures applied; (3) Dr. Vade failed to provide him with any medication after Dr. Vade's initial examination of him; (4) Dr. Vade failed to follow-up with

him to ensure that his finger was healing properly; and (5) Dr. Vade falsified medical records to indicate that he subsequently examined Williams when, in fact, he did not.

As for the latter four grounds, the Court finds that they do not rise to the level of deliberate indifference on the part of Dr. Vade. At most, Dr. Vade's actions in these regards would constitute negligence or malpractice, but neither is sufficient to establish deliberate indifference. *Duckworth*, 532 F.3d at 679. "A prisoner has the right to medical care, however, he does not have the right to determine the type and scope of the medical care he personally desires." *Carter v. Ameji*, 2011 WL 3924159, * 8 (C.D. Ill. Sept. 7, 2011)(citing *Coppinger v. Townsend*, 398 F.3d 392, 394 (10th Cir. 1968)). "The Eighth Amendment does not require that prisoners receive unqualified access to healthcare. Rather, inmates are entitled only to adequate medical care." *Leyva v. Acevedo*, 2011 WL 1231349, * 10 (C.D. Ill. Mar. 28, 2011)(internal quotations omitted).

"Further, a difference of opinion between a physician and the patient does not give rise to a constitutional right, nor does it state a cause of action under § 1983." *Carter*, 2011 WL 3924159 at * 8. "A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. Detella,* 95 F.3d 586, 592 (7th Cir. 1996).

Here, Williams has failed to proffer any evidence to rebut Dr. Vade's testimony that the medical attention that he provided to Williams was appropriate or evidence with which to show that Dr. Vade's actions rose to the level of recklessness. As for the loose suture, Dr. Vade replaced one of the five sutures just a few hours after Williams' initial visit. This is not recklessness. As for the failure to give medication, Williams acknowledges that Dr. Vade gave

him some antibiotics and Motrin after he replaced the loose suture on his second visit. Again, nothing about these actions constitutes deliberate indifference. As for Dr. Vade's failure to follow-up and allegedly falsifying Williams' medical records, Williams fails to demonstrate what injury these actions caused him or how these actions rise to the level of deliberate indifference. Accordingly, the Court finds that Williams has failed to demonstrate that Dr. Vade violated his Eighth Amendment's rights

Williams' claim that Dr. Vade delayed his treatment in violation of his Eighth Amendment right requires a slightly different review. The Seventh Circuit has held:

> In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer "verifying medical evidence" that the delay (rather than the inmate's underlying condition) caused some degree of harm. *See, e.g., Petty v. County of Franklin, Ohio*, 478 F.3d 341, 344 (6th Cir. 2007); *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005); *Surber v. Dixie County Jail*, 206 Fed. Appx. 931, 933 (11th Cir. 2006). That is, a plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental.
>
> This Court adopted the verifying medical evidence requirement in *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996)(citing *Beverbach v. Sears*, 49 F.3d 1324, 1306 (8th Cir. 1995)). In *Langston*, the plaintiff claimed that a one-hour delay in medical treatment after he was raped by another inmate violated the Constitution. 100 F.3d at 1240. We affirmed summary judgment in favor of the defendants because the plaintiff did not produce any evidence that the one-hour delay had a detrimental effect; the rape had already occurred, and there was no evidence that it had caused any serious physical injury. *Id*. at 1241. We did not, however, articulate what qualified as verifying medical evidence.

*Williams v. Liefer*, 491 F.3d 710, 714-15 (7th Cir. 2007); *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010)("A significant delay in effective medical treatment also may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain.").

Here, Dr. Vade testified that Williams' wait was necessitated by the need to have Williams' finger undergo an X-ray to determine whether surgery was necessary before inserting sutures that would, if Williams needed surgery, need to be removed. Once the X-ray revealed that surgery was unnecessary, Dr. Vade sutured Williams' laceration. Dr. Vade testified that Williams never seemed to be in distress and that having to wait a few hours for the X-ray to be performed and reviewed did not injure Williams and was not out of the ordinary.

The Court agrees. Dr. Vade's explanation appears to the Court to have potentially lessened and did, in fact, lessen Williams' pain and suffering. As Dr. Vade stated, had he sutured Williams' laceration only to determine that surgery was necessary, Williams' would have had to have had his finger sutured twice, the first one being unnecessary due to the surgery. Dr. Vade made the prudent decision to await the result of needed tests (*i.e.*, an X-ray) before proceeding, and nothing in the medical records contradict Dr. Vade's decision. *Walker*, 293 F.3d at 1038 (holding that the doctor was not deliberately indifferent based upon delays between the initial diagnosis and a return of test results). Williams offers no evidence that this three or so hour delay exacerbated or otherwise harmed him. *Langston*, 100 F.3d at 1241 (one hour delay caused no detrimental effect); *Ralston v. Hurley*, 2008 WL 41358, * 1 (5th Cir. Jan. 2, 2008)(nine hour delay caused no detrimental effect); *Palazon v. Secretary for Dep't of Corrections*, 2010 WL 144021, * 1 (11th Cir. Jan. 15, 2010)("Any delay in receiving surgery was because the hernia remained treatable without surgery. That McKenna felt he should have had surgery earlier than he did is insufficient to support a deliberate indifference claim."). Indeed, Williams conceded that he continues to be involved in daily activities, including some strenuous activities such as playing basketball. Accordingly, Dr. Vade is entitled to the summary judgment that he seeks.

**B.    Williams cannot show that Nurse Friel was deliberately indifferent to a serious medical need.**

Likewise, Nurse Friel is entitled to the summary judgment that she seeks. "[I]ndividual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'" *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010)(quoting *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003)).

Here, Nurse Friel testified that she did not participate in Williams' treatment. Instead, Nurse Friel simply completed the requisite paperwork accompanying Williams' treatment. During his deposition, Williams acknowledged that Nurse Friel did not provide any medical treatment to him; she only filed out paper work. Thus, Nurse Friel lacks the personal involvement necessary to impose liability on her under § 1983 for Williams' deliberate indifference claim. Although Williams claims that Nurse Friel "aided and abetted" Dr. Vade and falsified his medical records, Williams fails to explain how these facts, even if they are true, constitute deliberate indifference or how they caused him further pain and suffering that is prohibited by the Eighth Amendment.

**C.    Qualified Immunity.**

Because it finds that neither Dr. Vade nor Nurse Friel's conduct constituted cruel and unusual punishment in violation of the Eight Amendment, the Court need not address whether either is entitled to qualified immunity. *Van den Bosch v. Raemisch*, 658 F.3d 778, 787 n. 9 (7th Cir. 2011).

**IT IS, THEREFORE, ORDERED that:**

1. Defendants' motion for summary judgment is GRANTED [d/e 32].

2. The Clerk of the Court is directed to enter judgment in Defendants Suresh Vade, M.D., and Joyce Friel, R.N.'s favor and against Plaintiff Anthony Williams pursuant to Federal Rule of Civil Procedure 56(c).

Entered this 16th day of September, 2013.

s/ James E. Shadid
JAMES E. SHADID
CHIEF UNITED STATES DISTRICT JUDGE