UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| **ANTHONY WILLIAMS, #B-15551,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v.  ) | No.: 11-1319-JES-BGC |
| ) | |
| ) | |
| **CORRECTIONAL OFFICER SMALLS,** ) | |
| **DR. VADE, WARDEN MARCUS HARDY,** ) | |
| **and NURSE FRIEL,** ) | |
| ) | |
| **Defendants.** ) | |

## OPINION

**JAMES E. SHADID, Chief U.S. District Judge:**

This cause is before the Court on Defendant Correctional Officer Small's Motion for Summary Judgment.

## I.
## MATERIAL FACTS

On August 18, 2009, Plaintiff Anthony Williams ("Williams") was incarcerated with the Illinois Department of Corrections and was housed in the Pontiac Correctional Center's segregation unit. On that day, Williams was scheduled to meet with his mental health professional. Pursuant to IDOC protocols, prior to leaving his cell, an inmate must either place his property on his bed or, if he has a property box or bag, in the property box or bag and, then, place the box or bag under his bed. Not every inmate has a property box or bag as some inmates who are housed in the segregation unit are not permitted to possess property boxes. Although three or four days before he had requested a property box from Defendant Correctional Officer Daniel Small ("Small"), Williams did not possess a property box on August 18, 2009, because,

1

according to Small, there were no available property boxes in the housing unit at the time.[1] On August 18, 2009, Williams asked Lieutenant Cromie (as well as Lt. Brewer and Warden Hardy) about getting a property box, and Lieutenant Cromie advised Williams that the prison had been out of stock of property boxes, but that they had some now, and that he would get Williams a property box by the end of the day.

In order to attend his meeting with his mental health professional, Small escorted Williams to his appointment. Prior to leaving his cell, Williams placed his personal items on his bed. Small then placed Williams' hands behind his (Williams') back, placed his hands in cuffs, and escorted Williams to his appointment using a chain lead. All of these actions were taken pursuant to prison protocols.

Upon returning to his cell after his appointment, Small and Williams had to pass through a gate in order to get to Williams' cell. According to Small, Williams attempted to convince Small to release the lead chain at the gate so that he (Small) could open the gate. Small refused, maintained control of the lead chain, and opened the gate. Williams disputes this and claims that Small did, in fact, release the lead chain in order to pass through the gate and, then, regained control after passing through the gate.

When they arrived back at Williams' cell, Small continued to keep hold of the lead chain and directed Williams into his cell. Williams then entered his cell with his handcuffs on and the lead chain attached. Small was able to close the cell door and directed Williams to place his hands through the chuckhole so that he could un-cuff his hand and remove the lead chain.

According to Small, Williams would not place his hands through the chuckhole, but Williams disputes Small's account and states that he complied with Small's directive. At some

---

1  However, according to Williams, Small gave a prisoner in the cell next to him a property box even though that prisoner had requested a box after Williams had made his request.

2

point during this exchange, Williams suffered an injury to his hand. Specifically, Williams had an abrasion on his hand, and it was bleeding. Further medical tests revealed that Williams had sustained a broken finger on his left hand.[2]

On August 16, 2011, Williams filed the instant suit under 42 U.S.C. § 1983 alleging a violation of his First and Eighth Amendment rights. Small has now filed the instant motion for summary judgment claiming that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law on both of Williams' claims against him.

## II.
## LEGAL STANDARDS GOVERNING SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Ruiz-Rivera v. Moyer,* 70 F.3d 498, 500-01 (7th Cir. 1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v.*

---

[2] As part of their motion for summary judgment, Williams' co-defendants (Dr. Suresh Vade and Joyce Friel, R.N.) submitted an affidavit from Dr. Vade and Williams' medical records from the injury to his hand. Dr. Vade's affidavit and these records indicate that Williams suffered a non-displaced fracture of the left proximal finger. Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of these records in ruling on Small's motion for summary judgment. *Edie v. Baca*, 2009 WL 3417844, * 3 (C.D. Cal. Oct. 19, 2009)("Pursuant to Rule 201 of the Federal Rules of Evidence, the court may *sua sponte* take judicial notice of 'adjudicative facts' (*e.g.*, court records, pleadings, etc.) and other facts not subject to reasonable dispute and either 'generally known' in the community or 'capable of accurate and ready determination by reference to sources whose accuracy cannot reasonably be questioned.").

3

*Volvo Europa Truck, N.V.,* 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he "'must do more than simply show that there is some metaphysical doubt as to the material fact.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57 (1986)(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)); *Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 818 (7th Cir. 1999). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 250.

### III.
### ANALYSIS

Small makes three arguments in support of his motion for summary judgment that the Court will address in sequence.

    **A.**    **Questions of fact preclude summary judgment in Small's favor on Williams' First Amendment retaliation claim.**

The United States Supreme Court has explained that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Similarly, the United States Court of Appeals for the Seventh Circuit has opined: "[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates. Like students

who do not shed their free speech rights at the schoolhouse gates, neither do prison walls form a barrier separating prison inmates from the protections of the Constitution." *Bridges v. Gilbert*, 557 F.3d 541, 547-48 (7th Cir. 2009)(internal quotations and citations omitted).

Accordingly, in order "[t]o prevail on a First Amendment retaliation claim, [a plaintiff] must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Id*. at 546 (internal quotations omitted). If the plaintiff is able to satisfy this *prima facie* case, the burden shifts to the defendant "to rebut with evidence that the [defendant's animus] though a sufficient condition was not a necessary condition of the conduct, *i.e.*, it would have happened anyway." *Green v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011). If the defendant can make such a showing, the plaintiff "must then demonstrate that the defendant's proffered reasons for the decision were pretextual and that the retaliatory animus was the real reason for the decision." *Zellner v. Herrick*, 639 F.3d 371, 378-79 (7th Cir. 2011).

In the instant case, Williams has satisfied his *prima facie* burden. Regardless of whether Small's information about the galley being out of property boxes was true or not, by complaining to Lt. Cromie about Small's inability to obtain a property box, Williams was (essentially) lodging a grievance regarding prison conditions. It is undisputed that filing a grievance—even an oral one—against a prison official is protected speech that meets the first prong of the First Amendment test. *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006).

Likewise, Williams has satisfied the second prong in that he suffered a deprivation that would likely deter First Amendment activities in the future. According to Williams, Small pulled on the lead chain so violently that it broke his little finger on his left hand. The Court

5

finds that, as such, Williams has suffered an adverse action that is sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999)(placement in an area of the prison used to house mentally disturbed inmates combined with harassment and physical threats could constitute a sufficient adverse action for retaliation purposes); *Reynolds-Bey v. Harris*, 2011 WL 1396786, * 9 (6th Cir. Apr. 13, 2011) ("Bey alleges that Kingsbury searched him (either once or twice in quick succession) and used a racial slur and a thinly-veiled threat in retaliation for Reynolds–Bey's protected conduct. Although this is a close issue, we find that the alleged events could constitute action sufficient to deter a prisoner of ordinary firmness from engaging in protected activities in the future.").

Third, the Court finds that Williams' grievance was at least a motivating factor in Small's actions towards him. Among other things, "[a] plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 120 (2d Cir. 2009). During his deposition, Williams testified that Small heard him complain to Lt. Cromie about Small and not receiving a property box: "But Smalls was standing there, and Smalls was talking to two more officers. . . . And Smalls was made. He got mad because I was telling the lieutenant about what he was doing up there. . . .He was standing right there. He was mocking me, oh, oh, He was like a little kid, like mocking. . . . He was like, oh, crying to the lieutenant, he's crying to the lieutenant, big tough guy, he's crying to the lieutenant for a property box."

Moreover, according to the documents attached to Williams' Complaint, Small became belligerent towards Williams while Small escorted Williams back to his cell and called Williams a "crybaby stoolpigeon for telling Lt. Cromie that he refused to give me a property box." When

6

the two returned to Williams' cell only moments later, Williams suffered an injury at the hands of Small. Thus, the Court determines that Williams has satisfied his *prima facie* burden.

Because Williams has satisfied his burden, the burden shifts to Small "to rebut with evidence that the [defendant's animus] though a sufficient condition was not a necessary condition of the conduct, *i.e.*, it would have happened anyway." *Green*, 660 F.3d at 980. In this regard, Small contends that his actions toward Williams were not in retaliation for his complaints to Lt. Cromie but were in reaction to Williams' refusal to follow his directives regarding the lead chain and placing his hands in the chuckhole. "[A] defendant may be entitled to summary judgment if he can show dual motivation, *i.e.* that even without the improper motivation the alleged retaliatory action would have occurred." *Scott v. Coughlin*, 344 F.3d 282, 288 (2d Cir. 2003). Small's testimony regarding Williams' refusal to obey his directive and Small's need to maintain order is sufficient for him to carry his burden.

Therefore, the burden returns to Williams to show that Small's "proffered reasons for the decision were pretextual and that the retaliatory animus was the real reason for the decision." *Zellner*, 639 F.3d at 378-79. "At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012).

Although this is a close question, the Court finds that sufficient evidence exists with which a jury could conclude that Small's explanation for his adverse actions toward Williams was pretextual. Again, according to Williams, Small became belligerent, pushed Williams in the back, and called Williams names while escorting Williams back to his cell. A short time later, Small placed Williams into his cell with his hands still cuffed behind his back and yanked Williams' hands through the chuckhole causing injury to his hand and little finger even though

7

Williams states that he willingly obeyed Small's directions—including placing his hands through the chuckhole so that Small could un-cuff him and remove the lead chain.

In short, questions of fact surround Williams' First Amendment claim. Based upon his testimony, Williams requested a property box from Small. When Small did not comply with his request, Williams lodged an oral grievance with Lt. Cromie. When Small learned of Williams' contact with Lt. Cromie, he (allegedly) chastised Williams, shoved him in the back, and took actions that caused injury to Williams' hand and broke one of Williams' fingers. Small disputes Williams' version of events and places the blame on Williams for his injury in that he refused to follow directions and refused to voluntarily and subserviently return to his cell. However, this is the prototypical he said, she said, that precludes summary judgment.

### B. Questions of fact preclude summary judgment in Small's favor on Williams' Eighth Amendment cruel and unusual punishment claim.

Similarly, questions of fact preclude summary judgment in Small's favor on Williams' Eighth Amendment cruel and unusual punishment claim. The Supreme Court has recently repeated the standards by which this Court must evaluate a claim of excessive force under the Eighth Amendment. In *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the Supreme Court re-emphasized its holding in *Hudson v. McMillan*, 503 U.S. 1 (1992), that the "'core judicial inquiry [] was not whether a certain quantum of injury was sustained, but rather whether force was applied in a good faith-effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7). The Supreme Court went on to say:

> "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson*, 503 U.S. at 9, 112

8

S. Ct. 995; see also *id*., at 13-14, 112 S. Ct. 995 (Blackmun, J., concurring in judgment)("The Court today appropriately puts to rest a seriously misguided view that pain inflicted by an excessive use of force is actionable under the Eighth Amendment only when coupled with 'significant injury,' *e.g.,* injury that requires medical attention or leaves permanent marks").

This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. *Id*. at 7, 112 S. Ct. 995. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Ibid*. (quoting *Whitley*, 475 U.S. at 321, 106 S. Ct. 1078). The extent of injury may also provide some indication of the amount of force applied. As we stated in *Hudson* not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9, 112 S. Ct. 995. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Ibid*. (some internal quotation marks omitted). An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Ibid*. (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.

*Id*. at 37-38.

In the case *sub judice*, Small states that Williams was being combative on his return to Williams' cell, that Williams attempted to pull the lead chain, and that he pulled Williams' hands through the chuckhole in order to un-cuff Williams and to remove the lead chain. Small testifies that he needed to take these actions in order to main control over Williams, to ensure Williams' safety, and to ensure the safety of others. Small also offers the affidavit of Major Patrick Hobart who testified that prison protocol requires correctional officers to maintain control of a lead chain at all times when escorting prisoners who are in segregation and that, upon returning to a cell, the escorting officer must maintain control of the restraints and lead chain even while

securing the cell door shut. According to Major Hobart, this task may be accomplished by either employing the assistance of another correctional officer, or the escorting officer can move the lead chain into the chuckhole as he secures the cell door shut. Small employed the latter procedure with Williams, and Small contends that Williams injured his hands because Williams would not follow his directions regarding placing his hand through the chuck hole so that he could remove Williams' hand cuffs and the lead chain.

For his part, Williams tells a different story. As noted *supra*, Williams testifies that Small was irritated with him for asking Lt. Cromie about a property box and called Williams a "crybaby stoolpigeon." Moreover, Williams states that Small continually pushed him in his back as Small returned him to his cell. Finally, Williams claims that he followed Small's directions to place his hands in the chuckhole; nevertheless, Small violently yanked the lead chain, further pulling Williams' hands through and into the chuckhole, breaking Williams' little finger.

Had Williams simply complained about Small pushing him in his back while escorting him to his cell, Williams' claim would have been subject to summary dismissal because not every malevolent touch by a prison official implicates the Constitution. *Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009)(quoting *Hudson*, 503 U.S. at 9). Instead, the amount of force must be "of a sort repugnant to the conscience of making" in order to violate the Eighth Amendment. *Id.* at 475 (quoting *Hudson*, 503 at 9-10). Indeed, "[n]ot every unpleasant experience a prisoner might endure constitutes cruel and unusual punishment." *Lowe v. Price*, 2010 WL 1418723, * 2 (E.D. Ky. Apr. 7, 2010)(citing *Ivey v. Wilson,* 832 F.2d 950 (6th Cir. 1987)(per curiam)). "An inmate who complains of a 'push or shove that causes' no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins*, 559 U.S. at 38 (quoting *Johnson*, 481 F.2d at 1033).

10

But, Williams offers evidence of more than a mere shove in the back. He claims that Small pulled so violently on the lead chain that it broke his finger on his left hand (as well as causing bleeding, abrasions, and a laceration) even though he was not resisting but was complying with Small's directions. Therefore, the Court must focus on whether Williams' injury was the result of Small's good faith effort to maintain discipline or whether Small acted with malicious and sadistic intent. *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012) (real injury from significant force is actionable under the Eighth Amendment).

In determining whether an official is exerting force in a good faith effort to maintain or restore discipline or whether he is doing so maliciously and sadistically for the purpose of causing harm, a court must consider several factors. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). These factors include: (1) the need for application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury; (4) the threat reasonably perceived by the responsible official; and (5) any efforts made to temper the severity of a forceful response. *Id.* at 321.

Applying these factors to the facts in this case, the Court cannot conclusively say that Small did not act with malice or sadistic intent. The Court certainly understands and can appreciate the necessity of using force, sometimes force that inflicts pain and bodily harm upon a prisoner if there is a threat of an equal or greater harm to others. *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984)(quoting *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979)).

However, taking the facts in a light most favorable to Williams as the Court must, it seems unclear why any force was necessary. According to Williams, he voluntarily placed his hands in the chuckhole. As such, no force would have been necessary to pull Williams' hands using the lead chain. Similarly, if Williams was being compliant as he testified that he was,

Small was not in any danger or reasonable threat of danger. Indeed, Williams was locked in his cell at the time when his injury occurred. According to Major Hobart, prison protocol allows a correctional officer to seek assistance in removing an escorted prisoner's handcuffs and lead chain, but Small offers no evidence that he sought such assistance. In the end, Williams suffered a broken finger and other injuries to his hands, and the Court believes that those injuries are sufficient to support his Eighth Amendment claim. *Hudson*, 503 U.S. at 10 (bruises, swelling, loosened teeth, and a cracked dental plate are not *de minimis*); *Gomez v. Chandler*, 163 F.3d 921, 924-25 (5th Cir. 1999) (injuries were more than *de minimis* when plaintiff "allegedly suffered cuts, scrapes, and contusions to the face, head, and body"); *Harris v. Chapman*, 97 F.3d 499, 505-06 (11th Cir. 1996)(plaintiff who had been kicked, beaten, chocked with a towel, slapped in the face, and harassed with racial epithets had suffered more than *de minimis* injury); *Thomas v. Stalter*, 20 F.3d 298, 302 (7th Cir. 1994)(plaintiff who required the extraction of four teeth after being punched in the mouth did not suffer merely *de minimis* injury).

As the Seventh Circuit has explained: "We cannot choose between these differing accounts of the incident on a paper record. If a finder of fact were to accept [the plaintiff's] version, it could infer that [the defendant] acted with malicious intent, meaning that [the plaintiff] could establish an eight amendment violation." *Hill v. Shelander*, 992 F.2d 714, 717 (7th Cir. 1993). Williams disputes Small's version of events, including disputing Small's testimony that Small was unaware of Williams' injury until later. Thus, much like the facts in *Sallie v. Thiel*, 2001 WL 1563921 (7th Cir. Dec. 4, 2001), summary judgment is inappropriate because "awareness and intent when [the defendant] shut the feed slot door is a material question of fact." *Id*. at * 3. Similarly, whether Small yanked Williams' hand through or into the chuckhole after Williams had voluntarily placed them through or near the chuckhole was done

12

with malicious and sadistic intent in order to cause Williams harm in response to Williams' complaints regarding the lack of a property box or for any other reason is a question of fact that must be determined by the trier of fact. Because a trier of fact must determine Small's intent, that question of fact precludes summary judgment. *Washington*, 695 F.3d at 643-44.

"In order to survive a motion for summary judgment, the prisoner must have evidence that will support a reliable inference of wantonness in the infliction of pain." *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004)(internal quotations omitted). The Court finds that Williams has produced evidence that would support such a reliable inference, and therefore, summary judgment is inappropriate.

**C.  Small is not shielded from potential liability based upon the doctrine of qualified immunity.**

Finally, the Court finds that Small is not shielded from potential liability based upon the doctrine of qualified immunity. As the Seventh Circuit has recently held:

> Qualified immunity protects public servants from liability for reasonable mistakes made while performing their public duties. *See Denius v. Dunlap,* 209 F.3d 944, 950 (7th Cir. 2000). Defeating qualified immunity requires (1) conduct violating the plaintiff's constitutional or statutory rights that is (2) clearly established at the time of the violation such that a "reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L.Ed.2d 523 (1987)). *Pearson v. Callahan,* 555 U.S. 223, 242–43, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009), encouraged courts to begin with the substantive constitutional violation, but we remain free to consider first whether the right is clearly established if doing so will conserve judicial resources. . . . In doing so, we . . . draw all factual inferences in favor of the non-moving party, *McGrath v. Gillis,* 44 F.3d 567, 569 (7th Cir. 1995).

> Even when a public official's actions have violated a plaintiff's constitutional rights, the official can escape liability if the right was not clearly established at the time of the violation. *Denius,* 209 F.3d at 950. Importantly, the plaintiff must show that the right is clearly established such that "the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (internal punctuation omitted) (quoting *Anderson,* 483 U.S. at 640, 107 S. Ct. 3034); *e.g., Humphries,* 702 F.3d at 1006.

*Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013)(footnotes omitted); *Estate of Escobedo v. Martin*, 702 F.3d 388, 404 (7th Cir. 2012)(same).

Here, the qualified immunity defense is not available to Small on summary judgment. As explained *supra*, taking all of the facts in a light most favorable to Williams, a jury could find that Small retaliated against Williams for exercising his First Amendment right by inflicting pain upon and by physically abusing Williams for lodging an oral complaint against Small with Lieutenant Cromie regarding his request for a property box. *Gutierrez v. Kermon*, 722 F.3d 1003, 1009 (7th Cir. 2013)(holding that a defendant cannot obtain qualified immunity based on his version of disputed facts). Again, a prisoner's right to submit an oral grievance is well-established, and a reasonable prison official should understand that he cannot physically abuse a prisoner for exercising that right. *Antoine v. Ramos*, 2012 WL 6031483, * 3 (7th Cir. Dec. 5, 2012)("And though Robertson presses his defense of qualified immunity (which he raised in the district court), that defense offers him no protection because a prisoner's First Amendment right to file grievances is clearly established."); *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) ("abuse by prison officials is simply not part of the penalty that criminal offenders pay for their offenses against society.").

Similarly, a jury could find (if it believes Williams' version of the events) that Small's conduct of pulling the lead chain through the chuckhole while Williams' hands were still handcuffed constituted excessive force and violated Williams' right to be free from cruel and unusual punishment, thereby negating the qualified immunity defense. *Hill*, 922 F.2d at 718 (concluding that a prison sergeant was not entitled to qualified immunity because a reasonable prison sergeant should have reasonably known that the alleged conduct of grabbing the prisoner's hair and shoulder, pulling him out of his cell, and slamming his head and back against

the metal bars of the cellblock violated Eighth Amendment); *Jackson v. Gerl*, 622 F. Supp. 738, 749 (W.D. Wis. 2009) ("At any rate, so long as a jury could find that defendant Gerl acted with malice, she cannot establish grounds for qualified immunity (that she reasonably believed her actions were lawful).").

The Court finds that these cases cited herein are closely analogous and clearly establish Williams' First Amendment and Eighth Amendment rights in a particularized sense. *Findlay*, 722 F.3d at 900. The Court also finds Small's conduct (as told by Williams) is so plainly excessive that the qualified immunity defense is not available to him. *Id*.

**IT IS, THEREFORE, ORDERED that:**

1. Defendant's motion for summary judgment is DENIED [D/E 33].

2. A final pretrial conference is scheduled for November 7, 2013 at 9:30 a.m. Plaintiff shall appear by video conference. The Clerk of the Court is to issue a writ for Plaintiff's participation in the video conference. Defendant's attorney(s) shall appear in person before the Court sitting in Peoria, Illinois.

3. The Parties are further directed to submit the proposed final pretrial order by October 31, 2013. Defendant bears the responsibility of preparing the proposed final pretrial order and mailing the proposed order to Plaintiff to allow Plaintiff sufficient time to review the order before the final pretrial conference. *See* CD-IL Local Rule 16.3.[3]

4. Plaintiff and Defendant shall appear in person at trial. Inmates of the Illinois Department of Corrections who are not parties to this case shall appear by video conference, and IDOC employees who are not parties may also appear by video conference at trial. Other nonparty witnesses may appear by video at the Court's discretion. Therefore, the proposed

---

[3]The Local Rules are listed on this District's website: www.ilcd.uscourts.gov. A sample pretrial order is attached to those rules.

pretrial order must include: 1) the name, inmate number and place of incarceration for each inmate to be called as a witness; (2) the name and place of employment for each IDOC employee to be called as a witness; and, (3) the names and addresses of any witnesses who are not inmates or employees for whom a party seeks a trial subpoena. The party seeking the subpoena must provide the necessary witness and mileage fees pursuant to Federal Rule of Civil Procedure 45. Finally, the pretrial order must include proposed jury instructions.

     5.    A jury trial is scheduled for December 2, 2013 at 9:00 a.m. at the U.S. Courthouse in Peoria, Illinois.

Entered this 16th day of September, 2013.

s/ James E. Shadid
JAMES E. SHADID
CHIEF UNITED STATES DISTRICT JUDGE